UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| UNITED STATES of AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 2: 12-26-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| PATRICK ANDREW DONALD, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Patrick Andrew Donald's motion to suppress certain evidence from being presented during the upcoming trial.  [Record No. 14] Donald argues that the items in issue should be excluded because they were obtained in violation of his constitutional rights.  For the reasons discussed below, the motion to suppress will be denied.

**I.**

On May 16, 2012, the Security Bank in Maysville, Kentucky, was robbed of approximately $19,000.  Eyewitnesses reported that the perpetrators were two black males who drove off in a 1990s-model silver Cadillac.  Using bank surveillance video, police obtained a still photograph of the robbers, which was provided to local media outlets.  The day after the robbery, Officer Rice of the Maysville Police Department received an anonymous tip that one of the individuals in the photo was Patrick Donald.

During the investigation which followed, Officer Rice learned that Donald owned a 1995 champagne-colored Cadillac and had previously been convicted of bank robbery. In addition, he found a photo of Donald that he believed resembled the bank-surveillance image. Officer Rice conveyed this information to Detective Jared Muse, who added Donald's photo to an array of possible suspects that was presented to witnesses on May 18, 2012. Of the three bank tellers who were shown the photo lineup, two chose a photo other than Donald's (one positively and one tentatively), and the third made no identification at all. The photos were also shown to an employee of Tire World — a business located near the bank — who had observed two black males walking across the parking lot just prior to the robbery. The Tire World employee indicated that he was "most likely to lean towards" Donald's photo but was "not for sure." [Record No. 16-2, p. 5]

Continuing their investigation, Maysville Police learned that Donald had a girlfriend, Sarah Sosanya, who was under supervision by the United States Probation Office. Through her probation officer, the officers arranged a meeting with Sosanya for May 21, 2012, in Lexington, Kentucky. Meanwhile, Officer Rice was again contacted by the anonymous tipster, this time with information that in the early hours of May 19th, Donald had been arrested in Lexington for driving under the influence and had posted a cash bond.

On Monday, May 21st, Detective Muse and Lieutenant Justin Horch traveled to Lexington and examined bail money collected by the Fayette County Circuit Court Clerk over the weekend. In particular, they were looking for twenty-dollar bills whose serial numbers matched a list of "bait money" taken from the Security Bank in Maysville. Among the 859

twenties in the clerk's possession, there were three such bills.[1]  However, there was no way of determining whose bond had been paid with the bait money, as the funds were commingled. Later that day, the officers interviewed Sosanya.  She told them that Donald had instructed her to pay his bond using cash from a backpack in their shared apartment.  According to Sosanya, the backpack contained a large amount of cash in addition to the roughly $600 she removed.

Lieutenant Horch and another Maysville Police detective then sought a warrant to search Donald's apartment and car.  The affidavit used to secure the warrant, which was prepared by Lieutenant Horch with information provided by Detective Muse, stated the following information in support:

> On May 16th at 1132 am [sic] the Maysville, Ky Security Bank and Trust was robbed by two black males who fled the scene in a silver Cadillac.  After reviewing the video surveillance of the bank and posting it [to] several media outlets a phone tip came in stating that it was believed Patrick Andrew Donald of Lexington Kentucky was responsible for the robbery.  Vehicle records indicated that the male (Patrick A. Donald DOB [redacted]) did in fact own a similar vehicle that was used in the commission of the crime [sic].
>
>          . . . .
>
> A photo lineup was arranged and a witness identified the [sic] Patrick A. Donald (DOB [redacted]) as being in the area of the bank just prior to the robbery.  As the investigation continued officers discovered that the male had been arrested Friday May 18th for DUI in Lexington, KY and had been bonded out the same morning. A search of the bond money revealed three twenty dollar bills that had been used as bait money by Security Bank and Trust.  An interview with the suspect's girlfriend revealed that she had been instructed by the suspect to go [to] their residence and remove money from his backpack.  Female located a large amount of cash in small denominations and withdrew approximately $605 to bond him out.  Female advised that he always keeps the black backpack in his closet at the above residence and also in his vehicle if he leaves the residence.

---

[1]The bait money found at the clerk's office was ultimately seized pursuant to a warrant issued on May 22, 2012.  [*See* Record No. 21-4]

[Record No. 16-1, p. 3] During the search of Donald's apartment, police found a black backpack containing almost $8,700 in cash, including bait money from Security Bank.

On June 7, 2012, Donald was charged with one count of bank robbery by use of a dangerous weapon, in violation of 18 U.S.C. § 2113(a) and (d). [Record No. 1, p. 1] Following discovery, the defendant filed the present motion, seeking exclusion of the cash seized from the court clerk's office, the photographic lineup, and the cash found at his apartment. [Record No. 14, p. 1] On August 2, 2012, United States Magistrate Judge J. Gregory Wehrman held an evidentiary hearing on the motion to suppress. Shortly thereafter, Magistrate Judge Wehrman issued a Report and Recommendation in which he concluded that the motion should be denied in its entirety. [Record No. 24] Donald filed timely objections to the Report and Recommendation. [Record No. 29]

## II.

The Court reviews de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). Donald challenges the magistrate judge's conclusion that the warrantless inspection of bond money in the possession of the circuit court clerk did not violate the Fourth Amendment. [Record No. 29, p. 3] He further objects to Magistrate Judge Wehrman's determination that the search warrant for his apartment was valid.[2] [Id., pp. 2-3]

The Court declines to entertain Donald's third objection, which broadly asserts that Detective Muse and Lieutenant Horch "presented inconsistent and contradictory testimony" at

---

[2]Regarding the photo lineup, Donald reserved argument based on the government's representation that it may not use that evidence at trial. [Record No. 29, p. 3]

the hearing and that, as a result, "any Findings of Fact in the Magistrate's Report and Recommendation are not supported by the evidence and his Conclusions upholding the search of the bond money and of the Defendant's apartment are not supported by the evidence and his Conclusions upholding the search warrants are erroneous." [Record No. 29, pp. 2-3]  In essence, this is an attack on the entire Report and Recommendation.  Such a general objection is equivalent to no objection at all.  *See Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991)) (explaining that "a general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed").  Therefore, the Court will consider only Donald's specific objections pertaining to the bond money and the cash seized from his apartment.

### A.      The Bond Money

Donald claims that the warrantless examination and subsequent seizure of the bond money violated his Fourth Amendment rights because he had a reasonable expectation of privacy in the money used to pay his bond.  [Record No. 29, p. 2]  This argument is creative but unpersuasive.  The Fourth Amendment is implicated only when there has been a "search" — that is, "when the government [has] infringe[d] upon 'an expectation of privacy that society is prepared to consider reasonable.'"  *United States v. Warshak*, 631 F.3d 266, 284 (6th Cir. 2010) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).  In determining whether a search has occurred within the meaning of the Fourth Amendment, the Court first asks whether the defendant "'manifested a subjective expectation of privacy in the object of the challenged

search.'" *Id.* (quoting *California v. Ciraolo*, 476 U.S. 207, 211 (1986)).  If so, the next question is whether that expectation was reasonable.  *Id.*  Supreme Court precedent is clear that "'a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.'"  *California v. Greenwood*, 486 U.S. 35, 41 (1988) (quoting *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979)).

In the present case, nothing suggests that Donald had a subjective expectation of privacy in the money used for his bond.  He instructed Sosanya to turn the funds over to a third party and did not request any special treatment of the bills.  His actions indicate that he did not expect the bills, or the serial numbers printed on the bills, to remain private.  In addition, any expectation of privacy Donald might have had in the bond money would not have been objectively reasonable.  This point is illustrated by his assertion that "[t]here is no direct proof that the three $20.00 bills found in the search of the approximately $50,000 cash in the care, custody and control of the court clerk came from or could be traced to the $500.00 cash bond posted by the Defendant."  [Record No. 29, p. 2]  If there is no way to tell whether the $60 in bait money was part of his $500 bond payment because that payment was commingled with other funds, then how could Donald have had a reasonable expectation of privacy in the specific bills used to pay his bond?  And as the government points out, "[m]oney is fungible, and Donald could have no reasonable expectation that those very bills would be returned to him."  [*See* Record No. 16, p. 4]  Moreover, how could Donald claim an expectation of privacy in those three twenty-dollar bills if they were not part of his bond payment to begin with?  In short, any expectation of privacy in the numbers printed on the bills would not have been objectively reasonable.

-6-

Therefore, inspection of the bills did not constitute a Fourth Amendment search, and no warrant was required.

**B.      Cash Seized from Donald's Apartment**

Donald also maintains that the cash found in a backpack at his apartment was seized in violation of the Fourth Amendment.  The search warrant that led to discovery of the cash, he argues, was defective because it "was based upon improperly seized evidence and a false statement made by the officer in the affidavit for the search warrant representing that the Defendant had been identified by an eye witness as a perpetrator in the robbery."  [Record No. 29, p. 2]  To the extent this argument is premised on the allegedly unconstitutional seizure of cash from the Fayette County Circuit Court Clerk, it fails for the reasons discussed in the preceding section.

With respect to the alleged "false statement" in the warrant affidavit, Donald's argument is likewise unavailing.  In challenging the veracity of an affidavit used to obtain a search warrant, a defendant must first show, by a preponderance of the evidence, "that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).  Once the defendant has made this showing, the Court must determine whether, "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." *Id.* at 156.  If so, "the search warrant must be voided and the fruits of the search excluded." *Id.*

Donald contends that the following statement from the warrant affidavit is false: "A photo lineup was arranged and a witness identified . . . Patrick A. Donald . . . as being in the area of

the bank just prior to the robbery." [Record No. 16-1, p. 3; *see* Record No. 29, p. 2] Yet that statement is, as the magistrate judge observed, "literally true". Donald *was* identified in the photo lineup, albeit with qualification. [Record No. 24, p. 15; *see* Record No. 16-2, p. 5] The affidavit did not expressly state that there had been a positive identification; nor did it say that Donald "had been identified by an eye witness as a perpetrator in the robbery," as asserted in Donald's objections. [Record No. 29, p. 2] Rather, it indicated that the witness who picked Donald out of the lineup identified him as having been "in the area of the bank" just before the robbery occurred — which, according to Detective Muse's testimony at the August 2 hearing, was accurate.[3] [Record No. 16-1, p. 3]

Donald would fare no better if the Court construed the statement's lack of qualification as falsity. For purposes of the *Franks* analysis, it is not enough that a statement used to procure a warrant was false; it must have been knowingly or recklessly so. *See* 438 U.S. at 155-56. Donald points to no evidence of knowledge or recklessness here. Lieutenant Horch testified that he prepared the affidavit based on information provided by Detective Muse and that he was not aware the photo identification had been tentative. Although defense counsel hinted at the hearing that Lieutenant Horch should have independently examined the photo-lineup results, Donald does not contend that the failure to do so amounts to reckless disregard for the truth, nor

---

[3]Donald does not dispute that the witness who tentatively identified him in the photo array was the same Tire World employee who said he had observed two black males walking across a parking lot near the bank prior to the robbery. [*See* Record No. 21, p. 2 (describing the Tire World employee as the only witness who made any identification of Donald when presented with the photo array); *id.*, p. 7 ("[T]he only positive identification of Defendant was a witness who identified Defendant as someone he observed 'being in the area of the bank just prior to the robbery.'")]

does he offer any reason why Lieutenant Horch ought to have second-guessed the information he received from his fellow officer.

Finally, even if Donald could show that the affidavit contained an intentionally false statement, he cannot demonstrate that the remainder of the affidavit was "insufficient to establish probable cause." *Id.* at 156. As summarized by the magistrate judge, the affidavit contained the following additional information to support a finding of probable cause:

> [A]n anonymous tipster called and stated that [Donald] was one of the robbers; [Donald] owned a Cadillac matching the general description of the getaway car; bait bills were found amongst the bond money collected at the Fayette County Jail during the same limited time period in which [Donald] posted his cash bond; and Sosanya had told officers that there was a large amount of cash in small denominations in [Donald]'s backpack.

[Record No. 24, p. 17; *see* Record No. 16-1, p. 3] While any one of these items would not, by itself, satisfy the probable-cause requirement, the Court agrees with Magistrate Judge Wehrman that "the totality of the circumstances and information presented to the [issuing] magistrate amply support[] the decision to issue a warrant" even if the photo-identification statement is disregarded. [Record No. 24, p. 17] In short, there is no defect in the search warrant that requires exclusion of evidence seized from Donald's apartment.

### III.

No Fourth Amendment violation occurred with respect to the bond money because Donald did not have a reasonable expectation of privacy in the specific bills used to pay his bail or the serial numbers printed on those bills. Furthermore, because the warrant affidavit did not contain a knowingly or recklessly false statement and there was probable cause for the warrant

in any event, evidence seized from Donald's apartment pursuant to the warrant need not be suppressed.  Accordingly, it is hereby

    **ORDERED** as follows:

    (1)    Defendant Donald's Motion to Suppress [Record No. 14] is **DENIED**.

    (2)    The Report and Recommendation of United States Magistrate Judge  J. Gregory Wehrman [Record No. 24] is **ADOPTED** and **INCORPORATED** herein by reference.

    (3)    Defendant Donald's objections to the Report and Recommendation [Record No. 29] are **OVERRULED**.

    This 29th day of August, 2012.

Signed By:

_Danny C. Reeves_  DCR

United States District Judge