UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Respondent, ) | No. 2:12-CR-26-DCR-HAI-1 |
| ) | No. 2:15-CV-07395-DCR-HAI |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| PATRICK ANDREW DONALD, ) | |
| ) | |
| Defendant/Movant. ) | |
| ) | |
| ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On March 23, 2015, federal prisoner Patrick Andrew Donald, proceeding *pro se*, filed a motion seeking to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. D.E. 63. Donald filed a corrected Motion on May 11, 2015.[1] D.E. 81.

In September 2012, Donald pleaded guilty to bank robbery. D.E. 58. At his sentencing hearing in February 2013, the government argued that Donald's case warranted a four-level enhancement because "a dangerous weapon was otherwise used" during the robbery. *See* U.S.S.G. § 2B3.1(b)(2)(D). Specifically, the government alleged that Donald's unidentified codefendant held a heavy metal object in the pocket of his sweatshirt during the robbery. That object was either a dangerous weapon or something the robbers intended to be perceived as a dangerous weapon. The sentencing court received into evidence a security video of the robbery and heard testimony from the three bank tellers who were involved. *See* D.E. 61. Each teller testified she thought Donald's accomplice had a concealed gun. Each teller testified she heard a

---

[1] This filing date reflects the prison mailbox rule. *See Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002). Here, Donald affirmed under penalty of perjury that he placed the motion in the prison mailing system on May 11, 2015. The only difference between Donald's original and corrected motions is that the latter was signed under penalty of perjury.

heavy metallic sound when Donald's accomplice banged it against the counter, and one teller testified about the shape of the object. The sentencing court overruled Donald's objection to the enhancement and imposed a sentence at the top of his Guidelines Range—96 months. D.E. 75 at 84. Donald appealed his sentence, and the Court of Appeals upheld the dangerous weapon enhancement. *United States v. Donald*, No. 13-5291 (6th Cir. Aug. 1, 2014) (unpublished order) (filed at Docket Entry 76).

In his § 2255 motion, Donald argues his counsel was ineffective at sentencing for failing to object to the judge's decision not to watch the entire video and for failing to effectively cross-examine the tellers. D.E. 81 at 4, 7. Donald also accuses the government of introducing perjured testimony from the tellers. *Id*. at 5. Donald asks for an evidentiary hearing. D.E. 81-1 at 1, 14, 17. The relief he seeks is a new sentencing hearing. *Id*. at 17. The government has filed a response that addresses Donald's claim on the merits. D.E. 87.

For the following reasons, the undersigned **RECOMMENDS** that Donald's motion be **DENIED** on the merits.

## I. Right to Collateral Attack

Under 28 U.S.C. § 2255, a federal prisoner may seek habeas relief because a sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such a sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255. To prevail on a § 2255 motion alleging constitutional error, a defendant must establish that the error had a "substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). A § 2255 movant bears the burden of proving his or her allegations by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam).

The Court recognizes that Donald is proceeding *pro se*, without the assistance of an attorney. The Court construes *pro se* motions more leniently than other motions. *Castro v. United States*, 540 U.S. 375, 381-83 (2003); *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985). A document filed *pro se* is to be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## II.  Factual Background

At the beginning of Donald's February 25, 2013 sentencing hearing, the government called a bank security officer, D.E. 75 at 6, and entered into evidence the security video footage of the robbery, *id*. at 7-8, 14. The electronic video file contained footage from eight cameras. *Id*. at 9. Although the government played a short portion of the video so the witness could identify it, *id*. at 8, it does not appear the entire video of the robbery was played.

The government's other witnesses were the three bank tellers who were working at the time of the robbery. In its order upholding Donald's sentence, the Court of Appeals summarized the tellers' testimony that was relevant to the weapon enhancement:

> At the sentencing hearing, the prosecution questioned the three bank tellers who were working on the day of the robbery. Allison McGuire testified that, during the robbery, Donald's accomplice was "banging something on the counter" through the sweatshirt that he was wearing. When asked what kind of sound it was making, she replied "a heavy metal-type sound." McGuire also stated that when she looked over at the accomplice, she could see an object, which she believed was a gun, in his pocket. When asked why she believed it was a gun she answered: "Why would I not believe it was a gun? It was making a heavy sound, they're robbing us. You know, I thought it was a gun." She also stated that both men appeared to be frustrated and the accomplice repeatedly pounded on the counter and told the tellers to give him the money. McGuire acknowledged that neither man said that he had a weapon. The judge asked McGuire if the reason she thought the accomplice might have a gun was because of the sound he was making on the counter; she affirmed that it was.
>     Vanessa Stahl's testimony was similar to McGuire's. Stahl was asked if either man made direct threats towards her or Rice: "They wanted us to believe that they had something, sort of a weapon. Like the other man kept banging something on the counter. I mean, I couldn't see it because I have a cubicle there, but I could hear some metal or something slamming on the countertop." When asked why she thought the object was metal she replied: "It was definitely

3

>something hard, metal. I mean, it was not plastic or anything. I mean, it was a definite hard banging sound, like metal pipe, something. I don't know if it was a gun. I never saw anything. But it was definitely something that, you know, was hard, like a hard metal." Stahl also testified that she thought the accomplice had a gun. "Because they were in to rob us[,] I assumed that would—you know, they weren't going to come in there with something other than a gun. They wanted us to believe it was a weapon of some sort threatening us. I felt threatened by it."
>
>Sherry Rice's testimony corroborated that of McGuire and Stahl. Rice stated that Donald's accomplice had his hand inside the pocket of his sweatshirt when he hit the counter and she heard a metal sound. While beating the counter, he kept telling her to give him the money. When asked what she thought was making the heavy metal sound, Rice stated she thought it was a gun because she could see a cylinder-shaped outline in the accomplice's pocket.

D.E. 76 at 3-4.

In making his arguments at the close of the evidence, Donald's counsel said the government "did a nice job of calling witnesses," but did not show the court the "crucial" video. D.E. 75 at 61. Instead, Donald's counsel gave the court his own description of the video's content:

>[The security guard who testified] said [the robbery lasted] a minute and six seconds. Your Honor, if you will look at the film of the video, this is what you will see for yourself. At 11:31:56, Donald enters the front door. At 11:32 even, Donald places the bag on the counter. At 11:32:02, his partner enters the door with his hands in his pockets. At 11:32:16, visible from cameras 2 and 4, his partner steps up to the counter in front of Ms. Rice. At 11:32:28, Donald points to Ms. Rice's drawer with the index finger of his left hand. None of the witnesses saw that. Why that is important is this: His partner takes his left hand out from his coat and places it on the counter at 11:32:32. [O]ne second later, at 11:32:33, his partner . . . points to the right of Mrs. Rice with the index finger and his middle finger. . . [of] his left hand, not his right.
>
>* ***
>
>[Y]ou don't see him ever banging anything with the right side of his pocket. So [the teller] says he d[id] this. (Demonstrating.) If you look at the video, you don't see that take place. What you do see is his hand, left hand, coming up from his pocket to the counter, then he points, and then his hand goes to his face to pull up his mask.
>At 11:32:34, his left hand returns to the counter, not his pocket. Remains on the counter until 11:32:38, when he pulls his coat up to his face. I thought it

4

>was his coat, but it's his shirt. He's doing this little number with his shirt. (Demonstrating.)
>
>At that point, he steps away from the counter at 11:32:44. He takes his left hand and puts it back into his pocket. At 11:32:46, two seconds later, his partner steps back toward the counter with both hands in his pockets, but not onto the counter. And you can see this from the video. At 11:32:51, his partner turns completely away from the counter. At 11:32:53, his partner's left hand is holding his shirt over his mouth. In fact, he does that quite a bit, like I'm doing here. (Demonstrating.)
>
>At 11:33 flat, both men are moving toward the entry point. At 11:33:02, both men have left the bank. Now, we have seen from the testimony of the three witnesses, at no time did they feel like . . . a threat was directed toward them or at them personally. Each witness. No witness that we heard from today explicitly heard a threat.

D.E. 75 at 61-63.

The Sixth Circuit also summarized the trial court's conclusion:

>Taking all of the testimony under advisement, the judge ruled on whether a "dangerous weapon" was "otherwise used" during the robbery. Crediting Rice's testimony that she saw an object shaped like a cylinder in the accomplice's pocket, and the testimony of both Rice and McGuire regarding the sound the object made, the judge found that the men had a dangerous weapon. He also determined that the manner in which the men were acting was consistent with other individuals who rob banks and conceal weapons in their pockets until it is necessary to use them. Therefore, the judge found that the weapon was "otherwise used." He opined that by pounding the object on the counter and telling the tellers to give them all their money, the bank robbers issued an implied threat that if the tellers did not comply with their demands, then harmful action would be taken. For these reasons, the judge found that the four-level enhancement was properly applied.

D.E. 76 at 4.

### III.  Analysis

#### A.  False Testimony

The Court begins with Donald's second ground for relief. Donald argues he "was subject to government misconduct and a violation of due process when the government failed to correct false testimony" from the tellers concerning the weapon enhancement. D.E. 81-1 at 12. In his memorandum, Donald argues this ground as a substantive due process violation under *Giglio v.*

5

*United States*, 405 U.S. 150, 153-54 (1972). *See id*. at 12-14. However, Donald also appears to cast the issue as a species of ineffective assistance, *i.e.*, that his counsel was ineffective for failing to object to the government's use of false evidence. Specifically, Donald claims his counsel "actually adopted [the false testimony]" along with the government. *Id*. at 13. Donald characterizes the tellers' testimony as "a deliberate attempt by the government and [defense] counsel to knowingly present false evidence." *Id*.

The Court will first consider this claim as an alleged denial of due process under *Giglio*. In section X, *infra*, the Court will address this claim under the ineffective-assistance-of-counsel standard.

Under the due process clause of the Fourteenth Amendment, prosecutors are forbidden from knowingly using false evidence against a criminal defendant. *Giglio v. United States*, 405 U.S. 150, 153-54 (1972); *Napue v. Illinois*, 360 U.S. 264, 269 (1959). The Sixth Circuit has developed a three-part test for determining whether the prosecution has committed such a violation:

> the defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false. The burden is on the defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony.

*Brooks v. Tennessee*, 626 F.3d 878, 894-95 (6th Cir. 2010). The same holds true when the government, "although not soliciting false evidence, allows it to go uncorrected when it appears." *Id*. at 894 (quoting *Napue*, 360 U.S. at 269). When a *Giglio* error occurs, a new proceeding is required "if the false testimony could in any reasonable likelihood have affected the judgment." *Id*. at 895.

6

Donald's substantive *Giglio* claim is procedurally defaulted. Donald did not raise a *Giglio* claim in his direct appeal. D.E. 81 at 6.

The Court acknowledges that the government did not raise the defense of procedural default in its response brief to this Court. *See* D.E. 87 at 5. Procedural default is not a jurisdictional bar to review of a claim. Lower courts have discretion to raise the issue of procedural default on their own initiative in order to protect society's interest in the finality of federal judgments. *Elzy v. United States*, 205 F.3d 882, 886-87 (6th Cir. 2000) (raising the procedural default issue in a § 2255 case without inviting supplemental briefing because the default was "manifest in the record," so there was "nothing further the parties could bring to [the court's] attention that could bear upon the default"); *see also Mariswamy v. Warren*, 570 F. App'x 461, 462 & n.2 (6th Cir. 2014) (exercising discretion to raise a procedural default claim *sua sponte* in a § 2254 case). Here, Donald's default is manifest in the record. Donald concedes he did not assert this claim on appeal. D.E. 81 at 6. The Court considers it appropriate to raise the issue of procedural default.

When a defendant has procedurally defaulted a claim by failing to raise it in his direct appeal, "the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Harbison v. Bell*, 408 F.3d 823, 830 (6th Cir. 2005) (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)). Here, Donald cannot establish prejudice to excuse his procedural default because he cannot succeed on his underlying *Giglio* claim. Donald points to no evidence suggesting the tellers testified falsely besides his own assertion that the video would not corroborate the tellers' testimony that his accomplice banged a heavy object on the counter. In fact, Donald admitted in his plea agreement that "[t]he other robber clanked on the counter with something metallic and insinuated he had a

7

gun." D.E. 58 at 2. In raising a *Giglio* claim, the defendant bears the burden of proving the testimony was actually perjured, and "mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." *Brooks*, 626 F.3d at 895. Donald has not carried this burden. Donald has no factual basis to support his *Giglio* claim. Therefore, he cannot show prejudice to excuse his procedural default. Even if the claim was not procedurally defaulted, it would fail on the merits. Additionally, nothing in Donald's petition or memorandum suggests that "cause" existed to excuse any procedural default or that he was actually innocent of the offense. Donald is not entitled to relief on the basis of a substantive *Giglio* claim.

### B. Ineffective Assistance of Counsel

Donald's first and third grounds for relief cite his Sixth Amendment right to effective assistance of counsel. D.E. 81 at 4, 7. To successfully assert an ineffective-assistance-of-counsel claim, a defendant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). To prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 688.

However, a reviewing court may not second-guess trial counsel's strategic decisions. *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002). Thus, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances,

8

the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotations omitted). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

In order to prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. In the sentencing context, prejudice means that the movant's "sentence was increased by the deficient performance of his attorney." *Spencer v. Booker*, 254 F. App'x 520, 525 (6th Cir. 2007) (citing *Glover v. United States*, 531 U.S. 198, 200 (2001)). When evaluating prejudice, courts generally must consider the "totality of the evidence." *Strickland*, 466 U.S. at 695. Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id.* at 697.

**1.**

As his first ground for relief, Donald states his "Sixth Amendment right to effective assistance of counsel was denied when trial counsel fail[ed] to object [to] not viewing the video and failed to object and preserve[] that issue on the record for direct appeal." D.E. 81 at 4. Donald argues that viewing the "full video" would have "impeached the 3 bank tellers['] testimony that [Donald's accomplice] banged on the counter with a metallic object and [would have] discredit[ed] their testimonies." D.E. 81-1 at 11.

Counsel's failure to lodge an objection was not deficient performance. *Strickland* requires that "trial counsel's performance must be judged on the facts of the case, viewed from counsel's perspective at the time, and recognizing that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Peterson v. Smith*, 510 F. App'x 356, 362 (6th Cir. 2013) (quoting *Strickland*, 466 U.S. at 690). "[C]ounsel's failure to raise futile objections and arguments does not amount to constitutionally deficient performance." *Lyons v. Caruso*, 202 F.3d 269, at *3 (6th Cir. 1999) (Table).

Here, the video was entered into evidence. D.E. 75 at 14. Donald's counsel gave the court a lengthy explanation of what the video depicted. *Id*. at 61-63. Donald's counsel made the same argument to the sentencing court that Donald makes in his motion—that the video does not record Donald's accomplice banging a concealed heavy object in his right hand onto the counter. *Compare* D.E. 81-1 at 10-11 *with* D.E. 75 at 62. However, all three tellers testified to hearing a heavy, metallic, banging sound. D.E. 75 at 21 (McGuire), 36-38 (Stahl), 48, 55 (Rice). Donald's counsel cross-examined all three tellers, and elicited testimony that they never actually saw the object.

This record fails to rebut the presumption that Donald's counsel's behavior was strategic. *See Strickland*, 466 U.S. at 689; *Moss*, 286 F.3d at 859. Rather than lodging a formal objection insisting that the video be played, counsel described the video in painstaking detail and vigorously cross-examined the tellers. Under these circumstances, Donald's arguments do not warrant second-guessing counsel's strategy. Counsel's performance was not deficient.

Even assuming the video did not capture Donald's accomplice beating the hidden object on the counter, it is unlikely this discrepancy would have caused the sentencing court to discredit

the tellers' testimony. Here, three sequestered witnesses gave detailed and very similar descriptions of Donald's accomplice banging a hidden heavy metallic object onto the counter. Accordingly, it is highly unlikely that viewing the one-minute video of the robbery would have changed the outcome of the sentencing hearing. Donald meets neither prong of *Strickland* on this claim.

Donald also faults his counsel for failing to "preserve[] that issue," *i.e.*, the court's failure to watch the full video, "on the record for direct appeal." D.E. 81 at 4; 81-1 at 9. Donald fails to develop this aspect of his claim. He offers no argument that, had counsel preserved this issue by contemporaneous objection, the result of his appeal would have been different. For the same reasons counsel's failure to object created no grounds for finding deficient performance or prejudice, counsel's failure to preserve the issue for appeal likewise fails to establish a *Strickland* violation.

**2.**

Donald's third ground for relief is that his "Sixth Amendment right to effective assistance of counsel was denied when counsel failed to conduct an adequate cross-examination to impeach the three bank tellers' testimonies." D.E. 81 at 7. First, Donald argues the tellers' testimonies differed in their description of the object in his accomplice's pocket. D.E. 81-1 at 14. He says counsel should have "aggressively" attacked these inconsistencies and should have fought to use the video to impeach the tellers in cross-examination. *Id*. at 14, 16. Donald further argues that although Ms. Rice testified the object was round, she did not mention this detail to the detective who investigated the robbery. *Id*. at 14. He also argues the tellers' testimonies suggest they were not "hysterical" or "scared to death" during the robbery. *Id*. at 15.

11

"A defendant's right to cross-examination is an essential safeguard of fact-finding accuracy." *Higgins v. Renico*, 470 F.3d 624, 634 (6th Cir. 2006). Cross-examination "is 'the principal means by which the believability of a witness and the truth of [the witness's] testimony are tested.'" *Id.* (quoting *Davis v. Alaska*, 415 U.S. 308, 316 (1974)). But again, "trial counsel's performance must be judged on the facts of the case, viewed from counsel's perspective at the time, and recognizing that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Peterson*, 510 F. App'x at 362. Moreover, the defendant must also establish that but for this failure to cross-examine, the result of the proceeding would have been different. *Id.* (citing *Strickland*, 466 U.S. at 694).

Here, Donald's counsel did, in fact, cross-examine each of the witnesses. D.E. 75 at 22-30 (McGuire), 39-45 (Stahl), 50-55 (Rice). As the government points out:

> [defense] counsel elicited from McGuire that neither robber said "I have a gun" or "I got a weapon – that's going to hurt you." [*Id*. at 23.] Teller Stahl on cross admitted that she could not see the robber's pockets and that she did not see "an actual hitting" of a metal object on the counter, and did not hear an actual threat or see anything pointed at the teller. [*Id*. at 41-43.] Teller Rice on cross testified that she did not see Donald point anything at her, that Donald did not say "I'm going to kill you," or that he had a gun, and that she never saw a round object. [*Id*. at. 51-53.] Donald does not suggest what else counsel could have done to impeach the tellers. Counsel's performance was not ineffective; he did cross-examine the tellers and attempted to attack their recall of what happened during the robbery.

D.E. 87 at 6. This set of facts fails to surmount the presumption that counsel exercised reasonable professional judgement. Nor would Donald have been prejudiced under these circumstances. As the Sixth Circuit concluded on direct appeal, "The facts of this case amply support the district court's determination that [there was a weapon and it was] 'otherwise used' in the commission of the robbery." D.E. 76 at 5. Even had counsel cross-examined the tellers

12

more "aggressively," there was little chance of changing the result of the hearing. Donald fails both prongs of *Strickland* on this claim as well.

### 3.

The Court now returns to Donald's second claim for relief. To the extent Donald argues his counsel was ineffective for failing to correct a *Giglio* error (or for "adopt[ing]" the tellers' "false testimony," D.E. 81-1 at 13), this claim fails under *Strickland*. As discussed in Section III.A, *supra*, Donald falls far short of establishing that false testimony was used against him. Because there was no underlying *Giglio* error, counsel could not have been deficient in failing to object to the error. And, because there was no *Giglio* error, any failure to object would not have prejudiced Donald's defense. Construing—very liberally—Donald's second claim as an ineffective-assistance claim, it fails under both prongs of *Strickland*.

### III. Conclusion

Donald has not met his burden of establishing ineffective assistance of counsel or the use of false testimony at his sentencing hearing. The undersigned therefore **RECOMMENDS** that his 28 U.S.C. § 2255 motion be **DENIED** on the merits. The Court further **RECOMMENDS** that no Certificate of Appealability should issue.

This case also does not warrant an evidentiary hearing. An evidentiary hearing is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); s*ee Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). "It follows that if the record refutes the applicant's factual

allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*.

In this case, even taking Donald's factual allegations as true, they would not entitle him to relief. The facts, as presented in his motion and memorandum, do not preponderate in favor of finding that his counsel was ineffective or that the government proffered false testimony. The record therefore "conclusively show[s]" Donald is not entitled to relief. *Arredondo*, 178 F.3d at 782.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2254 Proceedings, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 21st day of October, 2015.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge